Good morning and may it please the court. My name is Rene Valladares and I represent Mr. Morris. The request for relief that I am making in this case is a modest request. I'm only asking that the court remand the matter for the purposes of an evidentiary hearing. I am not asking that this court make any broad sweeping announcements on the state of the law concerning state involvement in searches or that the court conclude whether in this particular case there was actually governmental involvement or not. It is actually our position that with the state of the record it is impossible to determine whether there was in fact governmental involvement or not. The court concluded that it was not necessary to hold an evidentiary hearing because there were no disputed issues of material fact. The court concluded specifically that the search of the casino of the — excuse me — of Mr. Morris, that the detention, I should say, of Mr. Morris, was for the purposes of a — for private purposes, and not — Can I ask a question? Which — first of all, are we talking about the search or the detention, and which search are we — if we're talking about a search incident to the detention, which detention should — would it be looking at? Are we looking at the first interception on the curb when he took out the property, the counterfeit or money? Are we looking at the fact that he was then detained in a room, or are we looking at the search incident to that detention, or all of them? I mean, what are we looking at? My position is that we should be looking at all of them, the three that you have just mentioned. The problem really is that, again, with a record that is not fully developed, we don't really know exactly what happened other than what we have. But this is why I'm asking. I think that the question of government involvement is an important and interesting one. But whether it matters might depend on which search we're looking at, because certainly by the time — in other words, whether it was a governmental person or a private person, what is the argument that the search would be invalid if you were talking — well, what overall is the argument that search would be invalid? I mean, you have — is the ultimate argument that they had no reasonable suspicion to stop him in the first place on the curb? Because after that, it seems they had probable cause to arrest him, and they presumably had a reason to, even if they were the police, to search him incident to that arrest when they found the gun. So where is the — assuming governmental involvement, where is the illegality? At the initial point. At the initial point. I see. And that's what — essentially, that's what we are saying, that at the initial point, there was illegality, because we would — we would submit that there was no reasonable suspicion. But again, I'd like to — And if we disagreed with that, there'd be no reason to get into any of this, because we could just assume it was the government. I'm sorry? If we disagreed with that, there'd be no reason to get into any of this very interesting other material, because we could just assume it was the government, decide as if the Fourth Amendment. That's correct. However, the problem is the following, again, is that even as to the issue of reasonable suspicion, we are not now in a position in which we can go ahead and make a determination, because there is an undeveloped record. I see. And that is, again, what I keep on going at the issue of — and that is being just the fact that we should have a hearing on the matter. Counsel, if we're talking about the initial stop on the curb, then what we're really talking about there is something akin to a Terry stop, right, by private security officials. That would be correct, yes. And under the statute, I think all they have to have is reasonable suspicion. Is that right? That's what the statute says, yes. The statute said, which is also the standard for — which is also the constitutional standard. That is the constitutional standard, yes. Now, tell me why on this record they don't have reasonable suspicion to stop somebody who has been — who they've been observing for hours in the casino, whose companion has just tried to pass a counterfeit bill and who's been walking suspiciously. Why doesn't that at least rise to the level of reasonable suspicion that under a Terry standard, they're entitled to stop him curbside? Yes, in all the period of time that they were watching him, there was absolutely no — he didn't do anything illegal. They did not observe anything which he did that may have been illegal. Well, except that he's been with somebody for hours and hours and hours, who's just tried to pass a $20 bill while she's being questioned. He's walking purposefully nearby, and why doesn't that — why doesn't that — why can't that raise a reasonable suspicion that he might have some knowledge or some involvement in an attempt to pass counterfeit bills? Two important points that go, again, to the necessity for a hearing. One being, again, in the completing papers, we disputed the fact that this was his girlfriend, and the government hammered us very hard on that. Number two, we also disputed the fact that he purposely passed by and surveyed the situation as it was — as it was stated — as it was stated in the officer's report. Now, when you say that you dispute that Easley is his girlfriend, that was maybe loaded language. Does that mean that you also dispute that he didn't know Easley at all? That's — we're not making — that's not — we're not disputing that matter. We do dispute, however, and again — The fact that she may have been — whether she was his girlfriend or just an acquaintance or whether he'd been spending all evening with her seems irrelevant, whether he just met her, but he's been with her for hours at that point, right? He has been with her for hours, and again, I think that is material because there's been no showing of illegality at that point in time. Until she goes and passes the counterfeit bill. She passes the counterfeit bill. He's not with her when she does it. And again, the statement, he passed by and surveyed the situation suspiciously, and again, that being obviously a material fact in that — in this issue, that is something that was disputed in our pleading papers. In the reply to the government's response, we disputed that matter, that he did pass by and surveyed the situation. But the finding in the recommendation and the district court's opinion deals only with the state action problem or the governmental involvement problem. Then was there a later determination as to the legality? Oh, I guess there wasn't because of ICE what happened. So because the conclusion was it was a private search, nobody ever addressed the question of whether it would have been a valid search otherwise. That is correct. The Court did not reach the ultimate issue as to whether there was indeed reasonable suspicion or not. And again, we go back to the fact that that is why it is needed, a suppression hearing is needed here. Was this even a Terry stop? I mean, as I understand what happened here, and I don't know the answer to this, but my understanding is these security people went up to him and said, we want to talk to you, essentially. And he said what? He said, I don't want to talk to you. But he sat down on the curb and took the money out? Well, again, that's... Nobody searched him at that point. Well, that's something we don't know. At a minimum, we can see from the report that there was at first some kind of degree of reluctance in the part of Mr. Morris. And, again, that should be something that makes it into, we would argue, makes it into not a consensual type encounter. Instead, makes it into a Terry stop. So basically what you're saying is because of the conclusion that this was a private search, the Court did not do what it otherwise would have done, which is any inquiry at all into the underlying facts. And therefore, we can't skip the government involvement step because we don't know what the district court would have done had it concluded that there was government involvement. That's correct. And the Court's... Essentially, the Court's premise was based upon a misunderstanding of the facts and also a misunderstanding of the state of the law concerning state action. Okay. So you want to give us... We'll give you a little extra time because it's an important and interesting question. But... And both of you. But quickly, what is your state... Your governmental involvement argument? Well, the governmental involvement basically is that... We disputed facts concerning the fact that the intent of the casino security officers in this case. And we disputed that from the very beginning. We said that, no, their intent is a public one, not a private one. Well, that was certainly true after they... Or at least quite arguably true at the point after they found out that he had the counterfeit money. Because at that point, they said that they were detaining him in order to call the police and that was what their authority was and that's what they did. They called the police. But the first time, when they stopped him the first time, why weren't they just trying to find out if he had counterfeit money so they could ban him from the building or something? Again, I think that that is the crux of the problem, is that... And the Court put it very well, is that arguably that was the reason after. We really don't know. We really don't know what was the reason. But what is the argument that the first time they stopped him, they didn't have at least some set of purposes of their own, which was to find out whether this guy was passing counterfeit money at their casino so they could make sure he didn't come back again? Well, and again, it could have been, as he simply stated, he was being detained for the purposes of the police. He was outside of the casino already. He was outside of the property of the casino. Which again, that lends an inference to, or excuse me, it renders less credibility to the belief that they were doing it for the purposes of the police, for a public-type reason, not for a private one. Now, and again, the Court, as far as the complete lack of governmental involvement, as they apprehended the state of the law, the Court believed that there was no knowledge and acquiescence. However, the Court basically presumed that one needed to have overt knowledge and acquiescence. And this record has been absolutely clear on the fact that tacit knowledge and acquiescence is more than enough. And we submit that, in this case, the statutory scheme that Nevada has signifies much more involvement than there was, for instance, in the Walker case, where you have simply historical, where you have some historical accounts in which the individual, the informant, provided some information in the past, and that was sufficient. In that case, the government did not know that he had performed the search until after. And again, we submit that this is more governmental entanglement, that the statute creates more governmental entanglement than in Walter. We're not saying that that's in and of itself enough. That's not the point. That's not in and of itself enough. I'm not asking the Court to go ahead and draw a bright-line rule. I'm just saying this is enough to go ahead and put it in the gray area that Walter talks about, that Reid talks about, and that we need to explore really what happened. What evidence would you envision introducing at an evidentiary hearing? Absolutely. We would go ahead and have the casino security officers testify. As to this particular incident, or as to their general practices, or both? Both. Absolutely both. As to this particular incident, exactly what happened, what was the timing on when they notified Metro, what exactly happened to make them believe that Mr. Morris was involved in this? What was their intent in detaining Mr. Morris? And, also, general practices. What is their general practice in relationship with Metro? What is it? Does Metro train their officers in this fashion? Does Metro provide information? Does Metro provide—excuse me, it's not Metro in this case, it's North Las Vegas Police Department. Does North Las Vegas Police Department provide intelligence as to suspects in the casino? If this court reads the statute, the statute is extremely broad. It grants the casino employees, in general, a tremendous amount of power, and it doesn't even—there doesn't have to even be a felony committed in the presence of a casino employee. Or, for that matter, even a felony committed. So long as there's a reasonable suspicion that there is one, that detention doesn't have to occur within the four walls of the casino, it can occur in the parking lot, like it did here. Actually, here, it occurred outside of the parking lot. Finally, there is immunity. They're being cloaked with immunity. I mean, again, we submit that that's a lot of governmental entanglement. This is way beyond what we have in— So, are you—who's got the burden here? You have the burden. Okay. But what you're looking for is a little bit of a fishing expedition. You want to know whether North Las Vegas Police Department had any contact that may have alerted the station casino's security officers to look for these folks? Is that what you're looking for? No, I'm not asking for just a mere fishing expedition. I'm just asking for the opportunity. I think that I submitted enough facts to go ahead and—submitted enough disputed facts to necessitate a hearing. You don't have any evidence that anybody had tipped off the casino to these folks? What we got is the report, and what we got is also the statute. Okay, but there isn't anything in there that would suggest that they were tipped off, that because the police had asked them to? No, no, there isn't that. And I'm not suggesting that there isn't. I'm not suggesting that under merits I can go ahead and meet my burden. So what we do know, then, is that the security officers have been tracking these folks for a while, and they get alerted when she tries passing the $20, the counterfeit bill, and then follow him to the edge of the property where they detain him, question him. He pulls off his shoe, shows them the remaining counterfeit bills. They take him back into the office. At that point, they pat him down and find the $22. Correct, yes, yes. And if you don't have evidence that they were acting in concert with the police, then what's unreasonable about that? Well, again, I think that what— Well, my point, again, is not that—I'm not saying that I can meet my burden on what I've got right now, but I can, I think, meet my burden to have an evidentiary hearing to try to determine that. Otherwise, if it's not with the engine of cross-examination and the subpoena power— But what is it that you think will come out in an evidentiary hearing that you don't presently have? That the intent of the casino officers was a public one, that it was to stop Mr. Morris for the purposes of law enforcement. I certainly think that that's going to come out. And number two, I do believe that at the hearing, there will come evidence that will establish that there's a pattern of practice, like in Walter, a historical pattern of practice, that will go ahead and give flesh to this statute and will show that, yes, there is that historical cooperation. Even if you could show that there was—that the government, that they intended to assist law enforcement, you would still have to show that the government knew of and acquiesced in the action. That's the first step of that Miller test. Well, but— Not again. But you don't have any evidence of that, do you? No, the knowledge and the acquiescence does not have to be overt. It can be imputed. Or it can be structural, is really what you're saying. That's my point. Exactly. Yeah. So you're saying that because of the Nevada statute, the first step of the Miller test is always met? No, no. I'm not saying that. I'm saying that it simply puts it in that gray area that this Court talks about, and its jurisprudence, and that because it's in that gray area, and, again, we had the clear statement from the security officer in its report, that at that point we should have had a hearing to really fully and fairly explore what happened and to determine whether, in fact, there was a state action, and if so, whether the stop was reasonable or not. We're not asking for anything more than that. We're not asking for the Court to say that under every situation where NRS 171, 1235 is involved, that there is state action. I'm not asking for that. All right. You're way over your time, and unless either judge has any further questions. Two further questions?  We'll give you about a minute in rebuttal. Thank you very much. And we'll give you 18 minutes if you want to use it, but you don't have to. Your Honor, and good morning. My name is Robert Ellman, representing the United States. May it please the Court. On September 8, 2003, the security guards at the casino stopped Mr. Morris because they believed he was stealing from the casino by attempting to exchange counterfeit money for real money. When they stopped him and questioned him, Mr. Morris confirmed that belief by giving them yet more counterfeit bills. Those facts are undisputed. It's also undisputed that police had no knowledge of or acquiescence in any of the foregoing actions. Furthermore, they discovered the gun, apparently through a pat-down because it was found in his right front pocket, again, without any knowledge of or acquiescence in that activity from the police. Now, absent a factual nexus that connects the government to those acts by the security guards, there's no Fourth Amendment implications. So what Mr. Morris is attempting to do is to create one de facto as a matter of law by relying on a Nevada statute. And I think that his position has just changed in court. I'm sorry? I didn't hear that. I think that his position has just changed today in court because the brief argues that the Nevada statute, as a matter of law, categorically deputizes all employees of casinos for Fourth Amendment search and seizure purposes. And I would point out — Well, it's a strange — I was looking at some case law that's not cited in the briefs, and this is perhaps not fair to talk about, but things like the Skinner case in the Supreme Court, which recognizes at least that there are situations in which the Fourth Amendment applies, in which there isn't a one-on-one involvement by the government, but a structural one, and which doesn't have to be mandatory but can be permissive. At least those two things are true about Skinner. And here, I mean, what's at least unusual about the statute is, A, it gives the security guards more authority than people in general to detain people for law enforcement purposes. But more than that, it says that they can do so solely for law enforcement purposes. And so at least — I mean, what confuses me about this case is that the original stop, I'm not at all sure, is covered by that. But after that, it appears they thought they were doing it for law enforcement purposes and that they only could have been doing it for law enforcement purposes. If not, they were doing it illegally. I mean, is that right? Well, I think you're asking me several questions. I am definitely asking you several questions. Okay. Let me start with what I think is the first one, which is Skinner. I do agree that Skinner holds that when the government imposes a mandatory police — No, but there was also another part of Skinner that was not mandatory. There was a part that was mandatory and there was a part that was permissible. Well, assuming that's true, what the defendants — It's true. I read it. I'll accept that. But what the defendants are arguing is that this statute, this Nevada statute, is conferring a unique status on casino employees and imbuing them with a police power. But what you don't know from the brief is that there are a number of other Nevada statutes that do the same thing. And if that argument is correct, the state of Nevada has virtually deputized everyone in the state. What Nevada has done is codified the shopkeeper's privilege, and the statute is Nevada Revised Statute 597.850. There are two other statutes. One applies to movie theater owners and their employees. That's Nevada Revised Statute 205.216. And there's a comparable sports venue statute, 464.101. All of those statutes afford the same degree of immunity, and all of them authorize merchants, owners of sports venues, owners of movie theaters, and their employees to do precisely what this statute enables casino employees to do. Every employee of every retailer in Nevada is a police officer for Fourth Amendment purposes under the defendant's argument here. What sort of criteria do you think is required in order for the defendant to suppress a seizure or search under the circumstances? Or is there no criteria? I mean, under this, are you saying any kind of a seizure by a guard at a casino is okay, whether they have reasonable suspicion or not? Certainly not, Your Honor. All that this statute does is immunize them to the extent that their behavior is not unreasonable when they take these actions. It's the same immunity granted to employees of retail shops when they have reason to believe that someone's shoplifting. But we don't worry about immunity in this case. We're worrying about whether you can suppress what was taken from this defendant. Correct. And in this instance, at the time of the stop, there was certainly reasonable suspicion. So the point really becomes moot when you look at the facts of this case, because even if you treated these casino security guards as full-fledged police officers, they had facts that amounted to more than reasonable suspicion before they even began to question misconduct. But what we're being told, and I was not aware of this, and I haven't gone back to check the record on it, but what we're being told is that those facts are in dispute and have never been investigated because of the premise that this was private. I don't think that's correct, Your Honor, and this is why. When you look at the motion to suppress, which begins at page 3 of the excerpts of record, I concede that there is a pro forma request for hearing in the caption, but beyond that, there is no statement of any material issue in dispute or, in fact, of any fact in dispute. Furthermore, nowhere in the body of that motion does the defendant suggest that a hearing is required. To the contrary, he argues, as I've restated today, that the Nevada statute imbued those casino security officers with the power of police categorically as a matter of law and, therefore, there was a Fourth Amendment violation and for no other reason. Did the defendant not ask for an evidentiary hearing before the magistrate judge or the district court? He did not, Your Honor, except in the caption of that pleading, and as this court's precedent states, and we cite the case on I believe it's page 18 of our brief, the moving papers have to specify the material issue in dispute in order to get a hearing. Now, we don't dispute that he had the right to legal recourse over this issue. He certainly had a right to move to suppress, but interestingly, and I think importantly, the motion to suppress relies exclusively on the security guard's report, which is reproduced at pages 12 and 13 of the supplemental excerpts of record. At that time, he was saying not only that there were no facts in dispute, but that the facts the magistrate relied on, you know, were taken for granted and accepted by the defendant. Now, as the court pointed out rather ably earlier, the security guards had reasonable suspicion by the time they stopped Mr. Morris that there were a couple other facts that add to that that weren't articulated and may not come out in the briefs. But Mr. Morris and Ms. Easley had been together in the casino in each other's company for over seven hours. When Ms. Easley attempted to pass the counterfeit bill, she told security officers that she got the bill from her boyfriend, who under all appearances was Mr. Morris. But before he was stopped? Yes, it was, Your Honor. And Mr. Morris chose that moment, of all moments after being in the casino for seven hours, to quickly exit and go outside. Before he did so, he walked by Ms. Easley while she was being questioned by security guards, and even though he had spent the last seven hours in her company, walked by, surveyed the situation, but made no acknowledgement of her. And if you look at page 12, which reproduces the security guard's report, you'll notice the security guard who authored the report said that he found that fact extremely suspicious. And at that point, he asked security guards to find Ms. Easley. All right, but all of this goes to the question of – I mean, it's useful, but it all goes to the question – it all assumes for the moment that the Fourth Amendment would apply and argues that there was reasonable suspicion. That's correct, Your Honor. Suppose that we agreed with that, or suppose alternatively we agreed that – well, if we agreed with that, then I suppose everything would be okay. If we thought that there was at least facts in dispute about that, which would depend on the record, and I'm really not clear about it at this point. Then we – there was a finding made that there – that the – as part of the Miller test, that the casino was operating for its own interest and not for governmental interest. And I don't know how you can make that finding without hearing. Perhaps you can make it as to the original stuff. But after that, he was – the report says that he was advised that he was being detained for a police investigation. The statute apparently authorizes him to be detained solely for the purpose of calling the police and having a police investigation. If that were so, i.e., he was detained solely for the purpose of a police investigation or solely for the purpose of calling the police, would that not meet a government agency standard, even if the police didn't specifically authorize this instance, if they authorized it in general, and in fact that's why he was detained? I assume I may answer your question. Yes, you may. No, as I said, I'm going to give you eight extra minutes. I appreciate it. Thank you. And again, I think it's several extra questions – several questions in one. The answer to the first one is that it only matters up to the point where Mr. Morris is stopped because reasonable suspicion has been developed at that point. They have Terry criteria met at that point. The gun's in his right front pocket. The pat-down produces the gun. You have no Fourth Amendment implication beyond that. We know that the casino officers were acting in the interest of the casino because the undisputed fact is that they stopped Mr. Morris because they believed he was passing counterfeit money or aiding someone else in passing counterfeit money. That certainly is an action, a duty taken by the security officers for the benefit of the casino. Interestingly, the defendant argues on the one hand that the sole purpose of this statute is to enable security officers in casinos to further police purposes for the public good only. Yet on page 12 of the brief, he cites legislative history that says that this statute will give the casino industry, and I'm quoting now, another tool against slot cheaters, end quote, that is obviously to the benefit of the casino owners as opposed to public good police power in general. If the initial stop, to return to your first question, Your Honor. Let me just ask a question about that. So your concept is that if the purpose of the private entity is to turn somebody over to the police because it's in their interest to turn somebody over to the police, but it's only to turn somebody over to the police, although that's in their interest, that that's enough private interest. Is that essentially what you're saying? No, Your Honor, because I think this Court's precedent, and I'm citing the United States v. Cleveland case, says that if the sole purpose of the private actor is to further the government purpose, then you've met the second criteria. I understand that. But I understood you to be trying to argue or to be arguing that it's not that even if the only thing they could be doing is to turn the person over to the police, and that's true at least from the point that they handcuffed him and detained him in this case, right? Is that right? No. To the point they handcuffed and detained him, they were furthering the casino's interests. Except that they said they were doing it for a police investigation, and that's the only authority they had was to do it for a police investigation. Well, that's after they have the counterfeit money. Yes. I mean, I'm talking about after they have the counterfeit money. All right? So from that point, and this is sort of hypothetical because I understand your point that anything after that really doesn't matter for Fourth Amendment purposes, but assuming for some reason that it did. From that point forward, is your argument or do you understand that from that fence forward they were operating only for public purposes? I think at some point they were operating only for public purposes because after they've found him, they've got the counterfeit money, he's no longer posing a risk to the casino. They tell him you can't come back here. They have no other reason to hold him. All right. So what your argument comes down to then is the fact that they may have been deputized or agents or whatever from thenceforward or from some point forward, but that from thenceforward it was all perfectly fine because they had developed probable cause, essentially, and because the pat-down search would have been valid as an incident to a valid arrest, even assuming it was the government. Is that basically your argument? That is accurate, Your Honor. Yes. That is our position. Counsel, does Nevada have a citizen's arrest provision? They do, Your Honor. The statute you're looking for, I believe, is Nevada Revised Statute 171.104 and 171.126. The first reference gives private persons authority to make arrests, and the second one defines the circumstances under which they can do so, and it's when they have a reasonable belief that a felony has been committed. Would the security officers have met the provisions to make a citizen's arrest? At what point, Your Honor? Well, at the point after they've already conducted the Terry stop and he's pulled his shoe off and shown them the counterfeit bills. The answer is yes, because they then have to. Would that be an independent ground then for them holding him, aside from the question of deputization and holding him for? I would go further, Your Honor, and say at that point, any private citizen would have had the right to arrest Mr. Morris and detain him until police could get him under the Nevada statutes, and that's why I think the implication is so important, because if you accept the defendant's argument, I think you have to accept that every person in Nevada has been deputized for Fourth Amendment purposes, and if everyone is a police officer, no one is. Thank you very much. Very useful argument. And we'll give you a minute in rebuttal. Thank you, since we took so much of your time. The court said to give me a minute. A minute. A minute. Quickly. Yes, I'd like to simply respond to the last question concerning the citizen's arrest. In this case, the detention could not have been committed pursuant to that statute, and I do invite the court to go ahead and examine carefully that statute. Under that statute, an arrest can only occur when the person arrested has committed a felony. It's not an issue of whether there's reasonable belief that he committed a felony. It's a has committed a felony, or second, when a felony has been in fact committed and he has reasonable cause for believing the person has done it. I have not looked at the counterfeit provisions. Is it illegal to possess counterfeit bills? That's a question that I cannot, frankly, I cannot answer to the court off the top of my head. Would you turn to a different question? Yes. Would you point out where in your motion to suppress that you disputed any evidence? Where in your motion to suppress did you dispute any findings or any evidence? Where did you put any of that into controversy? First of all, again, I would note that in EOR 6, I do state that the purpose for the investigation is for the purposes of a police investigation. To that end, I go ahead and I'm. Which line on page 6, on EOR 6? The court may allow me, please. Thank you. Then we continue on that vein as we state the same in our reply to the government's response, and we also state the same in the objections to the magistrate's report and recommendation. Is there any place in here other than the caption that you request an evidentiary hearing or any place that you suggest that there are disputed facts? In our reply, we do state that there are disputed facts. We state that there's a disputed fact as to how the situation was described when Mr. Morris allegedly passed by Ms. Easley, and consequently, any reasonable inferences that can be derived from that. We also, as I stated before, we do dispute the relationship between Mr. Morris as well as Ms. Easley. Did you, when you filed your objections to the magistrate's report and recommendation, did you add as one point the failure to have an evidentiary hearing? Yes, sir, indeed. And again, I want to make it perfectly clear, this is not, the government is trying to cast this as a how type situation. This is not one where basically there was just a boilerplate type mention saying the government's proof to prove that the statements were voluntary. Well, that's certainly not the case in this case. In addition to that, I want to emphasize that the government is trying to cast this as a categorical issue. We're not asking for a categorical pronouncement. This was simply one evidentiary hearing. Finally, as to the legislative history, I'd like to also point. I think you should stop that. But thank you very much. We appreciate your arguments, and we found them very useful.
judges: Siler, Berzon, Bybee